2026 UT App 104

# THE UTAH COURT OF APPEALS

JEFFREY CHRISTENSEN,
Appellant,
*v.*
COURTNEY JESSICA CHRISTENSEN,
Appellee.

Opinion
No. 20240810-CA
Filed July 9, 2026

Third District Court, Salt Lake Department
The Honorable Robert P. Faust
No. 214903222

Steve S. Christensen and Clinton R. Brimhall,
Attorneys for Appellant

Julie J. Nelson and Skylar Walker,
Attorneys for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and RYAN D. TENNEY concurred.

HARRIS, Judge:

¶1 After some twelve years of marriage, Jeffrey Christensen and Courtney Jessica Christensen divorced. They were able to agree on the terms of their separation, and these terms were incorporated into the divorce decree subsequently issued by the district court (the Decree). In the Decree, Courtney was awarded the equity in the family's minivan, and to effectuate this award, Jeff was ordered to deliver the minivan to Courtney, along with the documentation necessary for Courtney to be able to sell it.[1] In

---

1. Because the parties share the same last name, we refer to them by their preferred first names, with no disrespect intended by the apparent informality.

addition, the Decree required Jeff to pay child support for the parties' four children.

¶2      Jeff delivered the minivan to Courtney, but he did not deliver the necessary documentation. As a result, Courtney was unable to sell the minivan, and it was later repossessed. Courtney filed a motion to enforce the Decree, asking the court to order that Jeff pay her an amount equal to the equity in the minivan that she lost as a result of the repossession. The court held an evidentiary hearing on the matter and ruled in favor of Courtney, ordering Jeff to pay her $12,101.47.

¶3      Courtney also filed a separate motion to enforce the Decree, asserting that Jeff had fallen behind on child support payments and asking the court to order Jeff to pay what he owed. A domestic relations commissioner issued a recommended order determining that Jeff owed Courtney $5,684 in unpaid child support. Jeff objected to that recommendation, but the district court overruled that objection and adopted the commissioner's recommended order without holding a hearing, writing in a minute entry that the commissioner's ruling was "within the discretion" the court believed was afforded to the commissioner.

¶4      Jeff appeals both of these post-divorce rulings. He challenges the minivan ruling by asserting that the court committed procedural error by modifying the Decree in the absence of a petition to modify. We reject this argument and affirm the court's minivan ruling.

¶5      Jeff challenges the child support ruling by asserting that the court failed to hold a hearing when it was required to do so and failed to conduct an independent assessment of the matter. On this point, Jeff's arguments are well-taken, and we reverse the child support ruling and remand the matter to the district court for further proceedings, which must include the required hearing.

BACKGROUND

¶6      Jeff and Courtney married in 2009 and separated in 2021. At the time of the separation, they had four minor children. Jeff filed for divorce in 2021, and about a year later, in 2022, the parties were able to resolve their differences through settlement. The terms of that settlement were later incorporated into various orders, including the Decree. Two aspects of the parties' agreement are relevant to this appeal: their agreement regarding the minivan and their agreement regarding child support.

*Facts Relating to the Minivan*

¶7      A few months before the Decree was entered, the court issued an Order on Stipulated Agreement (the Order). In the Order, the court indicated that Courtney would be entitled to sell the minivan and that the "remaining proceeds" from any sale were to be "awarded to" Courtney. To effectuate the sale, Jeff was ordered to deliver the minivan to Courtney, along with the keys and "verification of the outstanding lien on" the minivan. Starting a few weeks after Jeff delivered these things to Courtney, Courtney was to assume the responsibility for making payments on the minivan and for selling it. This order was then expressly incorporated into the Decree, which provided that "[t]he Order pertaining to the [minivan] shall remain in full force and effect."

¶8      Jeff delivered the minivan and its keys to Courtney, but he did not provide any documentation regarding the outstanding lien on the vehicle. Courtney contended that without that documentation, she was unable to sell the minivan, make payments, or even lawfully use the vehicle because it could not be registered in her name.

¶9      Courtney then filed a motion seeking relief regarding the minivan. In particular, she asked the court to order Jeff to pay her an amount equal to the equity in the minivan that she claimed she was not able to realize, an amount she estimated to be over $15,000. She also asked the court to find Jeff in contempt for not

providing the documentation about the minivan. After Courtney filed her motion, Jeff sent Courtney's attorney a "loan statement," but he never provided any underlying loan documents. Once Courtney received the statement, she learned that Jeff had refinanced the minivan without her knowledge prior to the parties' stipulation. And although he made several payments, Jeff later "filed for bankruptcy relief and discharged the loan," which "result[ed] in the van being repossessed."

¶10    Courtney's motion to enforce first came on for a hearing before a domestic relations commissioner, who determined that Jeff had "never provided any underlying loan documents" and that his actions were what led to the "van being repossessed." After a series of calculations, the commissioner determined that there had been $13,434 worth of equity in the minivan, and she recommended that Jeff be ordered to pay Courtney that amount "for and as the proceeds to which she was entitled pursuant to" the parties' agreement as reflected in the Order and the Decree.

¶11    Jeff objected to the commissioner's recommendation, and the district court held an evidentiary hearing on his objection. At the conclusion of the hearing, the court found that Jeff "had refinanced the van" without informing Courtney but that "she knew he had missed payments" on the loan. The court made no express finding that Jeff was in contempt of the Order or the Decree, but it determined that although Jeff did deliver the minivan and the keys to Courtney, he "did not turn over the loan paperwork or leave them in the car" and that he was "not truthful" when he testified that he had done so. Based on these findings, the court ordered Jeff to pay Courtney the lost equity from the minivan, which the court determined was $12,101.47. The court also determined that Courtney had been the prevailing party on her motion to enforce and therefore ordered Jeff to pay Courtney's attorney fees incurred in litigating the motion.

¶12    A few weeks later, Jeff filed a motion to amend the court's order, and he raised a procedural objection to the court's ruling. He argued that Courtney had actually sought "modification" of

the Decree rather than enforcement of it, and he contended that a motion to enforce was not the proper vehicle through which she could "obtain a money judgment not granted in the [Decree]." The court denied Jeff's motion.

*Facts Relating to Child Support*

¶13 In the Decree, the parties agreed to custody provisions and to each other's income amounts. Using these inputs, the parties agreed—and the court later ordered—that Jeff was to pay child support to Courtney in the amount of $2,269 each month. The Decree also ordered the parties to "share equally the out-of-pocket costs of the premium actually paid by a parent for the children's portion of insurance," which would be "automatically deducted from or added to the child support paid or owed."

¶14 In a separate motion to enforce the terms of the Decree, Courtney asserted that Jeff had missed (or failed to timely make) seventeen monthly child support payments. She also alleged that Jeff had been submitting "false documentation" to the Utah Office of Recovery Services (ORS) and that she had "been unable to collect any of [the] child support arrears." She acknowledged that she had been able to collect some of the ongoing support payments through ORS, but she asserted that Jeff still had a significant arrearage. Courtney asked the court to find Jeff in contempt for "not being current on his child support obligations." In response, Jeff denied that he was behind on his obligations and asserted that he had, in fact, made all necessary payments.

¶15 The commissioner held a hearing on the matter. At the hearing, Jeff tried to present evidence of conversations he had with ORS in which he contended that he had been told that he was current on his payments, but the commissioner instead credited Courtney's submission of ORS records showing that Jeff was not current. The commissioner also would not consider certain Venmo history evidence that Jeff tried to proffer, because the commissioner wanted proof of payments through ORS records or Jeff's own bank statements. Jeff offered to bring in those

documents at a later date at a continued hearing, but the commissioner denied that request. In the end, the commissioner found that Courtney's "numbers [were] accurate" and that Jeff was $5,684 in arrears on his child support obligations, and she recommended that Jeff be ordered to pay Courtney that amount.

¶16   Jeff objected to the commissioner's recommendation, arguing that he had "paid every dime of child support" and that he had "submitted multiple pieces of evidence showing he was current on all payments." And he contended that Courtney had "not submit[ted] any evidence to support her claim regarding child support," that the numbers she had provided "were all over the place," and that she had submitted "dozens of misrepresentations and false evidence." Ultimately, he requested an "evidentiary hearing" in the district court "in which the evidence [could] be properly reviewed."

¶17   In a minute entry ruling, the district court "determine[d that] a hearing [was] not need[ed]." And it overruled Jeff's objection, stating as follows:

> The [c]ourt denies the objection as the matters determined are within the discretion of the [c]ommissioner and [are] not a decision which is a violation of the law. The [c]ommissioner is entitled to hear and weight the evidence and it was appropriate to determine the arrearage of child support. The fact the rulings do not go in favor of [Jeff], does not make them wrong.

¶18   Later, Jeff asked the court to reconsider its decision on several issues, including its decision not to hold an evidentiary hearing. On that score, he asserted that "as a matter of due process and by operation of" rule 108 of the Utah Rules of Civil Procedure, "he [was] entitled to a hearing on his objections to the [c]ommissioner's recommendation with an independent decision from the [district court] judge." The court issued a decision on Jeff's request regarding certain other issues, but it did not grant

Jeff's request for a hearing on the child support issue. In addition, the court awarded Courtney attorney fees in relation to this issue.

ISSUES AND STANDARDS OF REVIEW

¶19  Jeff now appeals, and he challenges both the order regarding the minivan and the order regarding child support. As concerns the minivan order, Jeff raises a procedural objection: he contends that the relief Courtney sought in her motion to enforce was not enforcement at all but was, instead, a modification of the Decree, and he points out that modification of a divorce decree can be obtained only after filing a petition to modify. We review this kind of procedural objection "for correctness and afford no deference to the lower court's ruling." *Elder v. Elder*, 2024 UT App 68, ¶ 12, 550 P.3d 488 (cleaned up).

¶20  As concerns the child support order, Jeff also raises procedural objections: he asserts that the district court was required to hold a hearing on his objection to the commissioner's recommendation, and he asserts that the court failed to conduct its own independent assessment of the matter.[2] These issues implicate rule 108 of the Utah Rules of Civil Procedure. "A district court's interpretation of a rule of civil procedure presents a question of law that is reviewed for correctness." *Day v. Barnes*, 2018 UT App 143, ¶ 12, 427 P.3d 1272 (cleaned up). But "a court's erroneous refusal to grant a requested hearing does not warrant reversal unless there is a reasonable likelihood that it affected the

---

2. Jeff does raise a substantive challenge to the court's child support determination, in that he challenges the amount of the court's arrearage award. But in light of our determination that Jeff was entitled to an evidentiary hearing on the child support issue and our resolution vacating the court's order and remanding for further proceedings, we need not reach the merits of this argument, because additional findings will be made at the evidentiary hearing on remand.

outcome of the case." *Pang v. International Document Services*, 2015 UT 63, ¶ 16, 356 P.3d 1190 (cleaned up).


ANALYSIS

I. The Minivan Order

¶21 Jeff first challenges the district court's minivan order, asserting that the court committed procedural error by awarding the equity in the minivan to Courtney without Courtney ever having filed a petition to modify. He argues that the court, "in essence, changed the [D]ecree to require Jeff to give Courtney cash in lieu of the minivan." This argument is unpersuasive.

¶22 After a final judgment has been entered, "district courts enjoy inherent authority, when properly invoked, to enforce a final judgment." *Elder v. Elder*, 2024 UT App 68, ¶ 14, 550 P.3d 488 (cleaned up). But the court's authority to enforce a judgment "is confined to the four corners of the judgment itself" and "does not generally extend to modifying the substantive rights of parties that have previously been agreed to or adjudicated." *Id.* ¶¶ 14–15 (cleaned up). Indeed, a motion to enforce is "procedurally improper where a judgment contains neither an unequivocal mandate nor a clear directive enjoining the respondent to undertake some action." *Id.* ¶ 14 (cleaned up).

¶23 But courts in some instances—including family law cases—"have power to modify a final judgment that has already been entered." *Id.* ¶ 15. In the family law context, "proceedings to modify a divorce decree . . . must be commenced by filing a petition to modify." Utah R. Civ. P. 106(a). After such a petition is filed and adjudicated, a court possesses the authority to "revisit many of the provisions contained in a typical divorce decree, including provisions pertaining to child custody, child support, alimony, property distribution, and debts." *See Elder*, 2024 UT App 68, ¶ 15 (cleaned up). But rule 106 "establishes a general rule . . . that any changes to divorce decrees must be brought about by

the filing of a petition to modify." *See Ross v. Ross*, 2019 UT App 104, ¶ 11, 447 P.3d 104.

¶24 In this case, Courtney did not file a petition to modify the Decree in relation to the minivan. Thus, the resolution of Jeff's procedural objection turns on the proper characterization of Courtney's motion regarding the minivan. If it was simply a motion to enforce, the court's actions were procedurally sound, and Jeff does not contend otherwise. But if the motion—although styled as a motion to enforce—was in reality a request to modify the Decree, then the court's actions were procedurally improper in the absence of a petition to modify. On this issue, we agree with Courtney that her request is better characterized as a motion to enforce and is therefore procedurally proper.

¶25 Here, the Order and the Decree entitled Courtney to sell the minivan and "awarded" to Courtney the "remaining proceeds" from any such sale. Courtney intended to sell the minivan, but she was unable to do so because Jeff failed to provide her certain documentation—including "verification of the outstanding lien on" the minivan—that he had been ordered to provide to her. After holding an evidentiary hearing, the court granted Courtney's request for an order compelling Jeff to pay Courtney the equity to which the Decree would have entitled her absent Jeff's failure to comply with its terms, an amount the court later quantified as $12,101.47.

¶26 In our view, the facts of this case are analogous to the facts of *Elder v. Elder*, 2024 UT App 68. In that case, the parties stipulated that the wife should be awarded the couple's townhouse "as an equalization of the distribution of the assets," and the husband was to "be responsible for any loans associated with the townhouse and have them paid off" immediately following the issuance of the decree. *Id.* ¶ 18. Essentially, the decree "contemplated that [the wife] would receive the townhouse free and clear." *Id.* But the wife did not receive the townhouse free and clear because the husband failed to timely pay off the loans. *See id.* This forced the wife to sell the townhouse

for a "discounted" amount after she paid off the loan herself. *Id.* ¶¶ 19–20. After the wife filed a motion to enforce, the trial court ordered the husband to "reimburse" the wife for the loan amount that she had to satisfy at the time of the sale. *See id.* ¶¶ 16, 20.

¶27 The husband appealed that order, making essentially the same procedural argument that Jeff makes here—he characterized the wife's request as one for modification (rather than enforcement), pointed out that the wife had not filed a petition to modify, and argued that the court therefore lacked the authority to order him to reimburse the wife for the loan amount. *See id.* ¶¶ 1, 13, 16. On appeal, we framed the question as whether the court's ruling "was authorized from within the four corners of" the divorce decree or "whether it instead modified the substantive rights of the parties." *Id.* ¶ 16 (cleaned up). And on the facts presented, we held that the court's ruling was authorized from within the four corners of the decree. *See id.* Specifically, we explained that when the wife asked to be reimbursed by the husband "for the pay-off amount on a loan that [the husband] was supposed to have paid from the beginning," the wife was simply asking the court to hold the husband "responsible" for the loan as "her divorce decree already required." *Id.* ¶ 23 (cleaned up). And we ultimately held that the court's order "appropriately carried out and gave effect to the terms of the decree." *Id.* ¶ 30 (cleaned up). On that basis, we concluded that there was no procedural problem with the court's order enforcing the decree by directing the husband to reimburse the wife for the loan amount she ended up paying off. *See id.*

¶28 Similarly here, the district court's order directing Jeff to pay Courtney an amount equivalent to the lost equity in the minivan merely enforced, but did not modify, the terms of the Order and the Decree. Those terms already entitled Courtney to sell the minivan and keep any remaining equity. Jeff had frustrated Courtney's efforts in that regard by failing to provide the necessary loan paperwork, as the Order and the Decree commanded him to do. As in *Elder*, "the court's decision to place that financial burden back onto [the husband's] shoulders did

nothing more than carry out and give effect to the decree's own terms." *See id.* ¶ 20 (cleaned up). And as in *Elder*, the court's order "was authorized from within the four corners of" the divorce decree. *See id.* ¶ 16 (cleaned up). The order simply facilitated Courtney's receipt of exactly what she would have received under the Decree but for Jeff's violation of it.[3]

¶29 Jeff resists this conclusion by making two arguments. First, he claims that the court treated the hearing on the motion to enforce as a petition to modify when it took up "questions of who was to blame and what should be done" about "the changed circumstances." But questions of who is to blame—or, stated another way, of who has violated the relevant provisions of an order or decree—are essential to any enforcement action; after all, there would be no basis for an order of enforcement without a

---

3. We note here that the district court never expressly found Jeff in contempt for failing to do what the Order and the Decree required of him: provide the loan documentation to Courtney. But in awarding the equity in the minivan to Courtney, it did find that Jeff "did not turn over the loan paperwork or leave them in the car" and that he was "not truthful" when he testified that he had done so. Thus, the court expressly found that Jeff had violated the terms of the Decree. And there was no dispute that Jeff knew what those terms were and had the ability to comply. *See Knowlton v. Knowlton*, 2023 UT App 16, ¶ 89, 525 P.3d 898 ("In order to prove contempt for failure to comply with a court order it must be shown . . . that the person cited for contempt knew what was required, had the ability to comply, and intentionally failed or refused to do so." (cleaned up)). Under these circumstances, the court could well have found Jeff in contempt, and in some ways this case might have been procedurally simpler if it had done so. But be all of that as it may, an express finding of contempt was not required here for the court to have properly issued the order in question. *See Elder v. Elder*, 2024 UT App 68, ¶ 12 n.2, 550 P.3d 488 (noting that the parties addressed the lower court's ruling as a "valid enforcement action" and not as a "contempt ruling," and following the parties' lead in that regard).

---

determination that there has been a violation. *See PacifiCorp v. Cardon*, 2016 UT App 20, ¶ 6, 366 P.3d 1226 ("Motions to enforce are appropriate only when a party fails to comply with his or her obligations." (cleaned up)).

¶30 Second, Jeff implies that he is being asked to pay the same debt twice, asserting that the enforcement order was harmful to him because it "resulted in him being obligated to both deliver the minivan and pay $12,101.47 as if he had never delivered the minivan." But there is no double-dipping here: while Courtney did receive the minivan after Jeff delivered it to her, she was never able to recognize any benefit from it, because Jeff failed to deliver the necessary paperwork, which resulted in the minivan's repossession. Stated another way, Courtney never received the benefit of what she bargained for—the equity that remained in the minivan after selling it. The court's enforcement order was not unfair to Jeff, because it simply provided Courtney with what the Decree entitled her to receive and because it held Jeff accountable for what he failed to provide to Courtney in the first place.

¶31 In the end, we think the court's actions are best characterized as actions aimed at enforcing the Decree, not modifying it. On this basis, we reject Jeff's procedural complaints about the court's minivan order, and we therefore affirm it, including the award to Courtney of attorney fees on this issue.[4]

## II. The Child Support Order

¶32 Next, Jeff challenges the district court's child support order, asserting that the court failed to hold a required hearing

---

4. The district court awarded attorney fees to Courtney as the prevailing party on this issue below. And because we affirm the court's minivan order, Courtney is entitled to attorney fees incurred on this issue here on appeal as well. *See Win-Win Invs. LLC v. Dutson*, 2021 UT App 18, ¶ 27, 483 P.3d 64 ("When a party who received attorney fees below prevails on appeal, the party is also entitled to fees reasonably incurred on appeal." (cleaned up)).

and failed to conduct its own independent assessment of the issues raised. We agree with Jeff on both counts.

¶33   Both of Jeff's complaints regarding the child support order implicate the text of rule 108 of the Utah Rules of Civil Procedure. "When we interpret a procedural rule, we do so according to our general rules of statutory construction." *Gardiner v. Taufer*, 2014 UT 56, ¶ 26, 342 P.3d 269 (cleaned up). And "we interpret court rules, like statutes and administrative rules, according to their plain language." *Day v. Barnes*, 2018 UT App 143, ¶ 12, 427 P.3d 1272 (cleaned up); *see also Strand v. Nupetco Assocs. LLC*, 2017 UT App 55, ¶ 17, 397 P.3d 724 ("We will ordinarily construe a procedural rule to mean exactly what it says, applying the text of the rule, not necessarily its policy." (cleaned up)). In considering the language used, we must "read the . . . rule as a whole," *Gardiner*, 2014 UT 56, ¶ 26 (cleaned up), "and interpret its provisions in harmony with other subsections," *State v. Maestas*, 2012 UT 46, ¶ 195, 299 P.3d 892 (cleaned up); *cf. In re adoption of R.P.*, 2026 UT 9, ¶ 28, 589 P.3d 710 ("We look at the provisions in the context of the entire statutory scheme." (cleaned up)).

¶34   Rule 108 outlines the procedure for objecting to a commissioner's recommendation. That rule states that a "judge *may* hold a hearing on any objection." Utah R. Civ. P. 108(d)(1) (2024) (emphasis added).[5] But in the same section, the rule also states that, "on an order to show cause for the enforcement of a judgment, any party has the right, upon request, to present testimony and other evidence on genuine issues of material fact." *Id.* R. 108(d)(2). Jeff interprets this language as affording district courts general discretion to decide whether or not to hold a hearing in appropriate cases but limiting that discretion in proceedings to enforce a judgment, in which instances courts *must*

---

5. Rule 108 has since been amended, effective May 1, 2026. We apply the version of the rule in effect at the time Jeff filed his objection to the commissioner's recommendation.

hold an evidentiary hearing if any party requests one. In our view, Jeff's interpretation of the rule is correct.

¶35    As an initial matter, we agree with Jeff that the plain language of rule 108(d)(2) compels this outcome. According to that language, if the matter involves "an order to show cause for the enforcement of a judgment," including a decree of divorce, then "any party has the right, upon request, to present testimony and other evidence." *Id.* This specific language—applicable to the particular type of proceeding at issue here—trumps the more general language in rule 108(d)(1) ordinarily affording courts discretion to decide whether to hold a hearing or not. *See State v. Debrok*, 2025 UT 40, ¶ 34, 579 P.3d 296 ("It is a settled rule of statutory construction that a more specific statute governs instead of a more general statute." (cleaned up)). For these reasons, even if we were making this determination on a blank slate, we think Jeff's interpretation is consistent with the rule's plain language.[6]

¶36    But we are not making this determination on a blank slate. Identical language from the next subsection—rule 108(d)(3)—has already been interpreted by this court, and we have concluded that the language means that "the district court *must allow* live testimony when requested." *See Day*, 2018 UT App 143, ¶ 17

---

6. Courtney pushes back on this interpretation, arguing that other parts of the rule "make[] clear that a hearing is optional." She points to subsections (d)(1) and (f) to suggest that the language of rule 108 contemplates a hearing not occurring. *See* Utah R. Civ. P. 108(d)(1) (2024) (stating that "[t]he judge *may* hold a hearing on any objection" (emphasis added)); *id.* R. 108(f) (addressing situations in which "there was *no hearing* before the judge" (emphasis added)). To be sure, circumstances exist when a hearing might not occur (for instance, when no party requests one). But the mere existence of language contemplating situations in which a hearing might not take place does not dilute the effectiveness of the more specific language in rule 108(d)(2) that compels a court to grant a party's request for a hearing in enforcement proceedings.

(emphasis added); *see also Ward v. McGarry*, 2021 UT App 51, ¶ 8 n.2, 491 P.3d 970 (expressing "concern[] about the court's refusal to grant [the party] a hearing when requested" under rule 108(d)(3)). In that subsection, the rule states that "[i]f the hearing before the commissioner was in a domestic relations matter other than a cohabitant abuse protective order, *any party has the right, upon request . . . to present testimony and other evidence* on genuine issues of material fact related to custody." Utah R. Civ. P. 108(d)(3) (2024) (emphasis added). The emphasized language is identical to that found in rule 108(d)(2), and that language requires a court to hold an evidentiary hearing upon request. *See Day*, 2018 UT App 143, ¶ 17. It would be nonsensical to interpret the language in rule 108(d)(2) differently than the identical language in rule 108(d)(3). *See Maestas*, 2012 UT 46, ¶ 195 (stating that we must "interpret [a rule's] provisions in harmony with other subsections" (cleaned up)). Accordingly, Jeff had the right, upon request, to present evidence in connection with any objection to a commissioner's recommendation in an enforcement proceeding. Here, there is no dispute that the child support proceeding was an enforcement proceeding subject to rule 108(d)(2).[7] And there is no dispute that Jeff requested a hearing. Under these circumstances, the district court erred by rejecting Jeff's request for an evidentiary hearing.

¶37 We also agree with Jeff's second assignment of error. Here, Jeff argues that the court gave undue deference to the commissioner's ruling and failed to conduct its own independent assessment of the matter. As Jeff points out, the court's main stated basis for overruling his objection was that "the matters determined [were] within the discretion of the [c]ommissioner" and that the commissioner had appropriately "hear[d] and weigh[ed] the evidence." This approach is erroneous.

---

7. And even if it wasn't an enforcement proceeding, Courtney does not explain how rule 108(d)(3) wouldn't apply; that rule— with identical language allowing Jeff to request a hearing— applies to all domestic relations matters "other than a cohabitant abuse protective order." *See* Utah R. Civ. P. 108(d)(3) (2024).

¶38 Rule 108(f) states that a "judge will make independent findings of fact and conclusions of law based on the evidence, whether by proffer, testimony or exhibit, presented to the judge, or, if there was no hearing before the judge, based on the evidence presented to the commissioner." Utah R. Civ. P. 108(f) (2024). Interpreting this language, we have held that "the rule is explicit that the district court's review is independent on both the evidence and the law" and that the rule "does not provide for an appeal-like review of a commissioner's decision." *Day*, 2018 UT App 143, ¶ 16. We observed that "the quantum and quality of the evidence presented to the district court under rule 108 may be materially different from that which was presented," "[t]ypically . . . by proffer," "to the commissioner." *Id.* ¶ 17. And we noted that rulings made by the commissioner "become the order of the district court until modified by that court" and that it would therefore "make little sense that the district court would be limited in reviewing what is essentially its own order." *Id.* ¶ 18. Rule 108(f) thus requires district courts to conduct their own independent review of matters submitted to them on objections from a commissioner's recommendation.

¶39 Indeed, we have even made clear that district courts must do more, in reviewing objections to a commissioner's recommendations, than merely "look at the discretion that the commissioner has and make a determination as to whether or not there was an abuse of that discretion." *See Somer v. Somer*, 2020 UT App 93, ¶ 13, 467 P.3d 924. In *Somer*, we specifically held that a district court that fails to "conduct[] an independent assessment of the facts and legal issues" presented in an objection to a commissioner's recommendation "contravenes the plain language of rule 108 and our holding in *Day*." *Id.*

¶40 In this case, the district court made the same mistake that the trial court made in *Somer*: it improperly employed an abuse of discretion standard in adjudicating an objection to a commissioner's recommendation instead of undertaking an independent assessment of the law and the facts. The court's child support order is thus infirm for two unrelated procedural reasons.

¶41 Despite the errors, Courtney argues that there are two alternative grounds, which she believes are both apparent in the record, upon which we could still affirm the court's child support order. We of course have the discretion to affirm a district court's order on alternative grounds, as long as those grounds are "apparent in the record." *See State v. Gaines*, 2026 UT App 44, ¶ 37, 589 P.3d 261 (cleaned up).

¶42 First, Courtney asserts that Jeff was not entitled to a hearing because his objection did not strictly comply with rule 108. In particular, she asserts that Jeff's objection did not "identify succinctly and with particularity the findings of fact, the conclusions of law, or the part of the recommendation to which the objection is made and state the relief sought," as required by rule. *See* Utah R. Civ. P. 108(b) (2024). We decline Courtney's request in this regard, because in our view Jeff's objection sufficiently identified the findings, conclusions, and parts of the recommendation he thought were incorrect. In his objection, he argued that he had "submitted multiple pieces of evidence showing he was current on all payments," and he contended that Courtney had submitted "dozens of misrepresentations and false evidence" to the court. Moreover, he asked the court to "properly review[]" the evidence at a hearing on the matter. In Jeff's view, the commissioner had not correctly or carefully considered the evidence, and the reasoning set forth in his objection was "succinct[]" and "particular[]" enough to trigger his right to an evidentiary hearing. *See id.*

¶43 Second, Courtney asserts that any procedural errors the court committed here by not holding a hearing and by applying abuse-of-discretion review were harmless, because in her view the evidence submitted to the commissioner overwhelmingly demonstrated that Jeff owed precisely $5,684 in child support arrears. We are unpersuaded.

¶44 For the errors here to be harmless, we must be convinced that there is no "reasonable likelihood" that the errors "affected the outcome of the case" in any material way. *See Pang v.*

*International Document Services*, 2015 UT 63, ¶ 16, 356 P.3d 1190 (cleaned up). And we are not so convinced. The child support calculations here are not necessarily complicated from a mathematical standpoint, but they involve examination of a lot of documents and evaluation of evidence from several different sources. It is in our view illustrative of the convoluted nature of the inquiry that Courtney, in her brief, devoted five-and-a-half pages of factual background and another five pages of legal argument in an effort to educate us about it. It is also worth noting, as we did in *Day*, that the evidence submitted to a commissioner usually comes in by proffer, while the evidence submitted to a district court usually comes in through sworn testimony or documentary evidence subject to the Utah Rules of Evidence. *See* 2018 UT App 143, ¶ 17. Part of the reason rule 108 requires district courts to hold an evidentiary hearing in certain cases traces back to a due process concern that parties deserve a day in court, before a district judge, when they can avail themselves, upon request, of the procedural protections afforded at that level. We are very hesitant, in all but the clearest cases, to write off as "harmless" a district court's error in failing to provide a required hearing on an objection to a commissioner's recommendation.

¶45 Moreover, any harmlessness inquiry is not necessarily a binary one—will Courtney win or will Jeff win—but must also take into account the likelihood of Courtney's victory changing in terms of amount. As shown by the events related to the minivan (where the district court, on objection, reduced the commissioner's recommended award by just over $1,300), district courts sometimes resolve objections by determining that the commissioner got the prevailing party right but was slightly off in calculating the amount of the award. We are not convinced that there is no reasonable likelihood of Jeff at least materially reducing—even if not entirely eliminating—the amount of the child support award that the commissioner recommended.

¶46 In sum, the court committed two procedural errors in overruling Jeff's objection to the commissioner's recommendation

regarding child support, and we are not convinced that those errors were harmless. Accordingly, we reverse the district court's child support order, including its award to Courtney of attorney fees on this issue.

CONCLUSION

¶47　We affirm the district court's minivan order because the proceedings related to the minivan were properly characterized as enforcement proceedings. We award Courtney her attorney fees incurred on appeal related to the minivan issue, *see supra* note 4, and we remand the case to the district court on this issue, but only for quantification of the appellate attorney fees award.

¶48　We reverse the district court's child support order because the court committed two reversible procedural errors in overruling Jeff's objection to the commissioner's recommendation. We remand the case to the district court for further proceedings on this issue, during which proceedings the court must hold an evidentiary hearing on Jeff's objection and must undertake an independent assessment—rather than abuse-of-discretion review—of the facts and the law underlying Jeff's objection to the commissioner's recommendation.

——————